lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEPHEN R. POPE,             )
                                   )
                 Plaintiff,       )
                                   )
vs.                              )
                                 )    Case No. 03-4180-JAR
CONSOLIDATED UNIFIED SCHOOL  )
DISTRICT #101,               )
                                 )
               Defendant.    )
_____)

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Stephen Pope brings suit against his former employer, Unified School District #101 (the District), alleging that nonrenewal of his contract of employment as a vocational agriculture teacher was based upon his age in violation of the Age Discrimination in Employment Act (ADEA). This matter is before the Court on defendant's motion for summary judgment (Doc. 34). For the reasons stated below, defendant's motion is granted.

**I.      Factual Background**

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to plaintiff. Pope began his employment with the District as principal of St. Paul High School (St. Paul) in 1993. At that time, Pope was certified to teach general science, American history, sociology, world history, anthropology, social studies composite, mathematics, chemistry, earth to space, and physical science, but was not certified to teach vocational agriculture. In August 2000,

Pope submitted a written request to the District Superintendent Mick Pond to be considered for the position of vocational agriculture teacher at St. Paul, leaving his position as principal of the high school. St. Paul had 86 students enrolled in vocational agriculture classes, beginning in the fall of 2000, and no one to teach the course.

Pope became aware of alternative routes to certification from Mr. Simpson, the prior vocational agriculture teacher at St. Paul, who was a graduate of Southwest Missouri State University (SMSU). Pope testified that he contacted an unidentified source at SMSU, who told him that he could take some courses or take the PRAXIS examination in lieu of course work. The PRAXIS examination is a means through which an individual with a general education diploma from a university can gain certification to teach. Kansas does not honor PRAXIS exams directly, but had a past practice of accepting PRAXIS certification credentials as sufficient for certification in the state of Kansas, specifically in the area of vocational agriculture.

In his request for transfer, Pope advised the Board of his communication with SMSU, but did not mention the PRAXIS examination alternative. Pope also advised that he had secured "a telephone evaluation of my transcripts and credentials and it appears that I would only need 12 hours to gain my credentials as a Vo-Ag teacher." Pope was permitted by the District to transfer from the principal position to a certified teaching position in vocational agriculture. Pope did not have the required certification to teach vocational agriculture when he started teaching the subject in August 2000. Pope contends that the Board authorized him three years within which to obtain certification to teach vocational agriculture.

Randy Corns has been the Superintendent of the District since July 2001, having previously

2

held the position of Assistant Superintendent.  Prior to September 15, 2000, Corns and Pope spoke about the necessity of the District completing an application for a waiver to permit Pope to teach vocational agriculture during the 2000-2001 school year without certification.  When he did not receive the necessary information, Corns sent a memorandum to Pope dated September 15, 2000, reminding him that the information was needed as soon as possible.  Pope advised Corns that he intended either to take courses or the PRAXIS exam, either one of which Pope believed was sufficient to obtain a waiver based upon his prior experience as principal at St. Paul High.

Corns sent a letter to Pope on November 8, 2000, as a follow-up to their earlier conversation. Corns advised Pope that the information was required by January 15, 2001, and that in order to have the waiver application approved, the State Board of Education required verification from an approved college of his admission to college, his plan of study to secure the certification and a copy of his current course enrollment.  Pope responded to Corns on December 18, 2000, with a handwritten note stating:

> This is BS [bullshit] but consider me pursuing my credentials.  I will be
> sending everything to SWMS @ Springfield & I will take the PRAXIS
> test this spring for certification in Missouri.

Corns prepared an application for a one-year waiver of teaching certification to permit Pope to teach vocational agriculture during 2000-2001, but never filed it.  The District never received a waiver from the Kansas Board of Education permitting Pope to teach vocational agriculture without certification. Pope did not take the PRAXIS test in the spring of 2001, because he did not feel he had adequately prepared.

The District received a memorandum from the Kansas State Department of Education (KSDE) dated May 31, 2001, which noted that the KSDE was concerned with increasing numbers of

3

certification waivers being sought to allow schools to utilize teachers in assignments without the appropriate endorsement as a waiver of regulation SBR 91-31-19(b)(1).  That memorandum noted that to secure such a waiver, a teacher was obligated to: (1) obtain admittance to a university program leading to endorsement in the requested waiver area; (2) acquire a plan of study listing the course work needed to obtain the endorsement and supply a copy to the District; (3) enroll in the course work on the plan of study; and (4) apply for provisional or full endorsement as soon as possible.  The memorandum noted that the District's obligation is to complete and submit the application form to KSDE with supporting documentation from the teacher establishing a deadline for the first semester of the 2001-2002 school year as November 1, 2001, and February 1, 2002, for the second semester.

By the end of his first year of teaching vocational agriculture in May 2001, Pope had not made progress with respect to securing certification other than teaching the course and "checking into" his options.  Pope had not taken the PRAXIS exam, had not enrolled in any courses, and had made no formal arrangements to proceed with certification.  During the summer of 2001, Pope did not enroll in any classes or take any other steps toward securing certification.  Despite this, the District did not submit a notice of nonrenewal to Pope by May 2001, as required in order to avoid extending a contract for a second year of teaching vocational agriculture to Pope.  Pope continued to teach vocational agriculture without certification for a second year, August 2001 through May 2002.

On September 28, 2001, Pope telephoned Corns to advise that Larry Gossen, Program Consultant for KSDE, had approved the vocational agriculture program for the school with the exception of Pope's lack of credentials or certification to teach the subject.  Pope advised Corns that Gossen was going to place St. Paul on a one-year probation because of Pope's lack of certification.

4

Pope advised Corns that he planned to visit Kansas State University to secure a plan of action outline in order to show that he was working toward certification.  Corns asked for a copy of that plan as soon as Pope had it, and memorialized the telephone conversation with a memorandum to Pope's personnel file.

On October 19, 2001, Corns talked with Gossen, who advised him that the District would be placed in a conditional approval of its vocational agriculture program until a certified teacher was teaching the course, that a teacher had three years to secure certification once the teacher began teaching in a field without certification and that funding and accreditation approval would be lost if those requirements were not met.  In his memorandum to the file, Corns noted that at that time, he saw "not [sic] option but to let Steve go due to certification issues and him unable to be certified in the amount of time available."  It was Corn's opinion at the time that Pope would not be able to secure certification within the time remaining.

On or about February 11, 2002, Corns received a copy of a letter from Gossen to the Board that advised that St. Paul High was in danger of losing funding for the vocational agriculture education program because of Pope's lack of certification.  The letter stated:

> St. Paul High School has had a non-certified instructor for two years. Unless some provision has been made for Mr. Pope to be certified by August, 2002, or he has applied for a waiver with the Department of Education, the St. Paul Agriculture Education Program will be disapproved and no longer available for state funding.

The letter noted two options available to the District to maintain approval: (1) Pope could become certified or obtain a waiver for another year, or (2) the District could hire a certified teacher by August

2002.  Shortly thereafter, Corns told Pope that the District was going to get another teacher for

vocational agriculture.  Pope reminded Corns of the waiver option and the Board's agreement to allow

him three years to become certified.  Corns replied, "Yeah, I did, but [Gossen] said they're gonna take

our money away."

It was Corns' understanding that if the District offered Pope a contract to teach vocational

agriculture education for a third year, Pope would become tenured pursuant to K.S.A. 72-5445(a)(1)

because he had been tenure eligible in his prior employment as principal.  Corns was concerned that

Pope had not met his oral and written promises to take the necessary steps to secure certification in

two years and that even if the District could secure a waiver of certification for the third year, Pope

would continue to fail to secure certification, leaving the District with an uncertified but tenured teacher

who could not be terminated without cause.  Accordingly, Corns recommended to the Board that it

issue a notice of nonrenewal of contract to Pope and that Pope not be offered a contract to teach

vocational agriculture a third year.  On March 4, 2002, the Board issued a notice of nonrenewal of

contract to Pope, and on April 1, 2002, voted to not renew Pope's contract.  Upon receiving the

notice of nonrenewal, Pope asked Corns whether or not he would be given three years to obtain his

certification "like everyone else," to which Corns replied, "no comment."

Pope took the PRAXIS examination on March 9, 2002, and received his passing results on or

about April 4, 2002.  Pope provided the results to Corns shortly thereafter.  On April 22, 2002, Ralph

Beacham, an education consultant with Southeast Kansas Educational Cooperative, or "Greenbush,"

advised Corns by e-mail that he had secured information from Terry Heiman, Director of Agricultural

Education at the Missouri Department of Education.  Beacham advised that Pope had applied for

6

certification in Missouri on all academic areas in which he was certified in Kansas, but he had been

"denied" certification in agricultural education.  Beacham suggested that Pope could not secure

certification through Missouri because Pope was required to have a contract to teach in Missouri in

order to obtain certification.

Pope submitted a letter to the District dated May 4, 2002, requesting reconsideration of the

decision to not renew his contract.  Pope acknowledged the problem presented because of the tenure

he would have achieved had another contract been offered to him.  Pope suggested that he would sign

a letter of resignation postdated May 1, 2003, which the District could later accept if it reconsidered its

decision and offered him a contract.  Based on advice of counsel outlining concerns with the validity

and enforcement of a postdated resignation letter, Pope's suggestion was rejected by Corns.

On May 6, 2002, Corns received an e-mail from Ralph Beacham of Greenbush forwarding e-

mails from other personnel who had concluded that the only way Pope could secure certification

through Missouri was to have a job in Missouri.  Corns received a memorandum dated May 8, 2002,

from the KDHE outlining certification waiver responsibilities.

Later that summer, Pope did receive certification from Missouri, and upon receipt such

certification, Pope submitted the certification to the State of Kansas.  Pope requested that he be

awarded Kansas certification based upon his two years of successful teaching of vocational agriculture

and his Missouri certification.  The State of Kansas granted Pope's request and issued credentials to

him on November 11, 2002, back dated to be effective September 18, 2002.

Pope was replaced by a teacher with approximately two years of experience.  The record does

not reflect the age of the teacher.  During the same year that Pope's contract was not renewed, the

District hired two teachers who had experience equivalent to Pope's to teach in other areas: Mike Casteal, age 49, and Mike Carson, age 56.  Because of their years of teaching experience and education, under the collective bargaining agreement, they received greater salaries than teachers with less experience.  Mr. Casteal's contract for the first year, 2002-2003, was in the amount of $32,546.  Mr. Carson's contract for that year was in the amount of $40,000, which was more than Pope's last contract of $39,023.

Pope contends that several teachers who were younger than he were given a longer amount of time within which to secure certification in their areas of teaching.  Marilyn McClure started with the District in 1990 teaching English and Spanish.  She obtained provisional certification in English 9-12 and made continuous progress toward certification by taking summer school each summer until course requirements were met, including the summer before she began teaching for the District.

Tim O'Brien started teaching for the District in August 1993, and was certified at that time to teach American history, geography, political science/government, social studies and world history.  In August 1996, O'Brien received a provisional certificate to teach physical education.  He became tenured in May 1996, before he began to teach physical education.

Doug Tuck began teaching for the District in August 1989, with certification in bookkeeping, typing, business economics, business law, social studies, American history and world history.  Tuck applied for a provisional certificate in February 1991 to teach political science and government.  He received his full certification to teach those subjects in June 1993, just over two years later.  Tuck became tenured in May 1992.  He had made continuous progress toward his certification while continuing to be certified in other areas that he taught.

8

Brian Carlson began employment with the District in August 1994, with certification in mathematics.  Carlson was requested to obtain certification in sciences.  He received provisional certification based upon his course work, continued to make progress, and obtained certification in general science in August 1994, and certification in chemistry, physics and physical science in August 2000.

Pope was 53 years old at the time of his nonrenewal.  Neither Corns nor anyone else at the District made age-related jokes, spoke derogatorily of Pope's age or mentioned his salary or age.

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]   A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[2]   An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3]   The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]

---

[1]  Fed. R. Civ. P. 56(c).

[2]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3]  *Id.*

[4]  *Id.* at 251-52.

[5]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]   When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[9]

## III.   Discussion

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[10]   The ADEA limits its coverage to those individuals over the age of 40.[11]   An ADEA plaintiff has the burden of proving that age was a determining factor in the employer's challenged decision.[12]   Although the plaintiff need not show that age was the sole reason

---

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325)).

[7] *Id.*

[8] *Id.*

[9] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[10] 29 U.S.C. § 623(a)(1).

[11] 29 U.S.C. § 631(a).

[12] *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557-58 (10th Cir. 1996) (quoting *Lucas v. Dover*, 857 F.2d 1397, 1400 (10th Cir. 1988) (internal quotation omitted)).

for the challenged action, age must have "made the difference" in the employer's decision.[13]  "[A]n

ADEA plaintiff may proceed by either of two general methods to carry the burden of making her or his

case.  A party may attempt to meet his burden directly, by presenting direct or circumstantial evidence

that age was a determining factor in his discharge.  Or, more typically, a party may rely on the proof

scheme for a prima facie case established in *McDonnell Douglas Corp. v. Green*."[14]

       Absent any direct evidence of discrimination because of an employee's age, the Court will

employ the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp.*[15]

and *Texas Department of Community Affairs v. Burdine.*[16]  Under this framework, Pope must first

prove a prima facie case of age discrimination.[17]  If Pope is able to sustain this burden, the burden of

production shifts to the District to "articulate a legitimate, nondiscriminatory reason for rejection."[18]  If

the District sustains this burden, the burden of production shifts back to Pope to show that the District's

proffered reason for rejection is false, or merely a pretext, and the presumption of discrimination

created by establishing a prima facie case "drops out of the picture."[19]  Although the burden of

production shifts back and forth between the parties, the ultimate burden of persuasion remains at all

---

[13] *Id.* (quoting *EEOC v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988)).

[14] *Id.* (internal citations and quotations omitted).

[15] 411 U.S. 792 (1973).

[16] 450 U.S. 248 (1981).

[17] *See id.* at 252-53; *McDonnell Douglas Corp.*, 411 U.S. at 802.

[18] *See McDonnell Douglas Corp.*, 411 U.S. at 802.

[19] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)).

times with the plaintiff.[20]

### A.  The Prima Facie Case

Establishing a prima facie case is "not an onerous burden," and gives rise to an inference of discrimination by eliminating the most common nondiscriminatory reasons for plaintiff's treatment.[21] Pope alleges that the District did not renew his contract because of his age.  To establish a prima facie case of age discrimination, the plaintiff must show that "(1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person."[22]  The Court will assume for purposes of this motion that Pope has made a prima facie case.[23]

### B.  Legitimate, Non-Discriminatory Reason for Rejection

The District asserts that it did not renew Pope's contract because he had not obtained certification, placing the District in the position of having to offer an uncertified teacher tenure, and in peril of losing its funding for vocational agriculture from the state.  The Court finds that the District easily sustains its burden of production by articulating a legitimate, non-discriminatory reason for terminating Pope.

### C.  Pretext

Given the articulated legitimate reason, Pope must come forward with evidence presenting a genuine issue whether the District's stated reasons for terminating him were pretextual.  Pope can meet

---

[20] *Burdine*, 450 U.S. at 253.

[21] *Id.* at 254.

[22] *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks omitted).

[23] Because the District focused primarily on the issue of pretext, the Court does not address its alternative argument that Pope cannot establish that he was qualified for the vocational agriculture teaching position.

his burden by showing "that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e. unworthy of belief."[24]  To show pretext, a plaintiff may rely on the same facts he relied on to establish his prima facie case; and the court may consider this same evidence and inferences drawn from such.[25]

"Mere conjecture that the employer's explanation is pretext for intentional discrimination is an insufficient basis for denial of summary judgment."[26]  "There are three ways to establish pretext: 1) presenting evidence that defendant's stated reason for the adverse action was false; 2) presenting evidence that defendant acted contrary to written company policy; or 3) presenting evidence that defendant acted contrary to an unwritten policy or practice."[27]

Pope first contends that the proffered reasons for his nonrenewal are false.  Pope argues that Corns and the District knew that he was pursuing certification through the state of Missouri, and that Corns failed to submit Pope's plan to the State to obtain a waiver.  Pope also argues that the District knew before it voted to not renew that he had passed the PRAXIS exam, although he had not been granted certification.  Pope asserts that his plan for certification was proven successful by the prior vocational agriculture teacher and the District could have confirmed his plan by "merely asking Mr. Simpson of the process utilized by him for obtaining his credentials."

Even though the Court views the facts in the light most favorable to plaintiff, "a challenge of

---

[24] *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

[25] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 143 (citation omitted).

[26] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Branson v. River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).

[27] *Campbell v. Meredith Corp.*, 260 F.Supp.2d 1087, 1105 (D. Kan. 2003).

13

pretext requires us to look at the facts as they appear to the person making the decision to terminate [the] plaintiff."[28]  A plaintiff can show pretext by, for example, exposing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason."[29]

In this case, the Board, upon Corns' recommendation, made the decision to not renew Pope's contract, and the Court must view the facts from its perspective.  In April and May 2002, Corns and the  Board believed that Pope had for two years, ignored requests to progress toward certification, that Pope was pursuing a plan to secure certification in the third year that was unlikely to be successful, and that the District would be left with an uncertified, tenured teacher, which would cause their vocational agriculture program to lose certification and funding.  This belief was based on information from the KDHE and advice from Greenbush that Pope's plan to secure certification through Missouri and the PRAXIS exam was not workable.  There is nothing in the record to suggest that Simpson, a graduate of SMSU, had secured his Kansas certification through the same scheme developed by Pope. Moreover, although waiver of certification could be secured for up to three years, Pope did not comply with the requirements to secure such a waiver, as outlined in the memorandum from the KDHE.  Any application for a waiver by Corns or the District based on Pope's proposed plan would have necessarily been either incomplete or false, based on the information Corns had at the time.

Evidence that an employer misjudges an employee's qualifications does not preclude summary

---

[28]*Kendrick*, 220 F.3d at 1231.

[29]*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (internal quotation marks omitted).

judgment.  "The relevant inquiry is not whether [the Board's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[30] "An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment."[31]  Indeed, "arguing about the accuracy of the employer's assessment [of plaintiff's performance] is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest."[32]  Although Pope ultimately was able to secure certification within the third year, information available to the District at the time of nonrenewal suggested that Pope's plan was faulty and he would not be able to obtain such certification, placing the District's vocational agriculture program at risk and leaving them with a tenured, uncertified teacher.  Because the issue is not whether the District was correct, but whether its belief was honest, the Court finds that Pope has not established pretext on these grounds.

Pope also asserts that other younger teachers were treated more favorably than he when they were given three years or longer to secure certification.  Pope points to several other teachers to show that he was treated differently based on his age.  To show discriminatory intent, however, Pope must show that similarly situated employees outside of his protected class were treated more favorably than he was.[33]  "Similarly situated employees are those who deal with the same supervisor and are subject to

_____

[30]*Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999), *overruled on other grounds, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

[31]*Rivera*, 365 F.3d at 925 (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998)).

[32]*Id*. (citing *Kariotis v. Navastar International Transportation Corp.*, 131 F.3d 672, 677 (7th Cir. 1997)).

[33]*See McDonnell Douglas*, 411 U.S. at 804 (evidence that other employees engaged in conduct similar to plaintiff's and were treated more favorably is especially relevant to showing pretext).

the same standards governing performance evaluation and discipline."[34]

None of the other teachers used as comparisons were similarly situated to Pope.  Corns was not Superintendent during any of those teachers' certifications.  Pope offers no evidence of a younger teacher who was not tenured, but was allowed to secure tenure prior to obtaining certification in a primary teaching area.  In each of the other situations, the teachers had sufficient hours in their subjects to secure provisional certifications.  None of the comparable teachers were seeking certification in the main area they taught.  All were certified in the primary area in which they were hired to teach but were seeking certification in additional areas.  None of these teachers placed the District at risk of losing certification or funding of one of its educational programs.  Pope's reliance on incomparable situations with other teachers does not create a genuine issue of material fact.

There simply is no evidence that the District's decision to nonrenew Pope's contract was based on anything other than proper, if not mistaken, motives.  Viewing Pope's evidence in the light most favorable to him and drawing reasonable inferences therefrom, the Court finds that no reasonable jury could find the District's proffered reasons were a pretext for age discrimination.   Pope has not shown that he was treated differently from other similarly-situated, nonprotected employees who were seeking certification.[35]  Pope's only evidence is his subjective belief that his termination was discriminatory.[36] Pope's feeling that he has been the victim of discrimination fails to demonstrate a genuine issue of fact

---

[34]*Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).

[35] *Kendrick,* 220 F.3d at 1230.

[36] *See id.* at 1231 n. 11 (noting that plaintiff's subjective belief that defendants were conspiring against him was insufficient to create a genuine issue of material fact).

absent supporting evidence.[37]

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 34) is **GRANTED**.

IT IS SO ORDERED.

Dated this _21st_ day of May 2005.

    _S/ Julie A. Robinson_
Julie A. Robinson
United States District Judge

---

[37] *Money v. Great Bend Packing Co., Inc.*, 783 F. Supp. 563, 574 (D. Kan. 1992); *see also Witt v. Roadway Express*, 164 F. Supp. 2d 1232 (D. Kan. 2001) (conclusory statements of the nonmovant are not sufficient to survive summary judgment).